**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**JENNIFER SENECAL,**

                              **Plaintiff,**

        **vs.**                                    **1:12-CV-0487**
                                                   **(MAD/RFT)**

**B.G. LENDERS SERVICE LLC; KEENA**
**STAFFING, INC; and BRIAN GRANGER**

                              **Defendants.**
───────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

**LAW OFFICES OF ANTHONY J.**              **ANTHONY J. COLLELUORI, ESQ.**
**COLLELUORI & ASSOCIATES, PLLC**
6800 Jericho Turnpike, Suite 208E
Syosset, New York 11791
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**           **NICHOLAS J. D'AMBROSIO, JR., ESQ.**
111 Washington Avenue
Albany, New York 12210
Attorneys for Defendant Keena Staffing, Inc.

**BERGER & KERNAN, PC**                    **JOSEPH C. BERGER, ESQ.**
10 Maxwell Drive
Suite 101
Clifton Park, New York 12065
Attorneys for Defendants B.G. Lenders
Service, LLC and Brian Granger

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff, Jennifer Senecal, was formerly an employee of Defendant B.G. Lenders

Service.[1]  Defendant B.G. Lenders Service had a contract with Defendant Keena by which

───────────────────

        [1] Defendant B.G. Lenders Service, LLC was incorrectly sued as "B.G. Lender Services."

Defendant Keena was to serve as Defendant B.G. Lenders Service's Professional Employer Organization. This arrangement involved a specific delegation of payroll, human resources, and other duties between Defendants, which were considered co-employers.

Plaintiff alleges that while working for Defendant B.G. Lenders Service, she was sexually harassed by its owner, Defendant Brian Granger, Plaintiff's employment with Defendant B.G. Lenders Service was terminated. Plaintiff filed a charge with the EEOC against Defendant B.G. Lenders Service. Approximately nine months later, Plaintiff filed an amended EEOC charge against both Defendant B.G. Lenders Service and Defendant Keena. The EEOC eventually determined that reasonable cause supported Plaintiff's claims. After an unsuccessful period of voluntary conciliation, the EEOC notified Plaintiff of her right to sue, and she subsequently brought Title VII and New York Human Rights Law ("NYHRL") claims against both Defendants.

Defendant Keena has moved for summary judgment dismissing all of Plaintiff's claims against it. Defendant Keena argues that Plaintiff's Title VII claims against it must be dismissed because Plaintiff's amended EEOC charge naming Defendant Keena was untimely. The Court does not decide whether or not Plaintiff's amended charge was untimely. Instead, the Court finds that, even if Plaintiff's amended EEOC charge against Defendant Keena was untimely, Plaintiff's Title VII claims against Defendant Keena may proceed because Defendant Keena and Defendant B.G. Lenders Service share an identity of interest, and Plaintiff named Defendant B.G. Lenders Service in a timely EEOC charge. Defendant Keena argues that Plaintiff's NYHRL claims against it must be dismissed because they fall outside the applicable statute of limitations. The Court finds that Plaintiff's NYHRL charges do not fall outside the statute of limitations because that statute of limitations was tolled while Plaintiff's amended EEOC charge was pending.

Accordingly, the Court denies Defendant Keena's summary judgment motion in its

entirety and allows all of Plaintiff's Title VII and NYHRL sexual harassment claims against Defendant Keena to proceed.

## II. BACKGROUND

Plaintiff Jennifer Senecal who worked as an "Office Manager" at Defendant B.G. Lenders Service, LLC from "on or about October 30, 2006 through on or about August 25, 2008." *See* Dkt. No. 47 at ¶¶ 2, 4. Plaintiff's supervisor during this time was Defendant Brian Granger, Defendant B.G. Lenders Service's owner. *See id.* at ¶ 16; Dkt. No. 53-3 at 1. Defendant Keena Staffing, Inc. ("Defendant Keena") is a Professional Employer Organization ("PEO") which had a co-employer relationship with Defendant B.G. Lenders Service "[b]eginning in or around July 2004 through December 2009[.]" *See* Dkt. No. 47 at ¶¶ 1-2; *see generally* Dkt. No. 42-11.

### A.     Plaintiff's Allegations of Sexual Harassment

Plaintiff alleges that Defendant Granger first began harassing her "on or about February 3, 2007," at which point he allegedly began asking "very personal" questions about Plaintiff's female friend. *See* Dkt. No. 49 at ¶ 8. Defendant Granger's sexual harassment allegedly continued throughout 2007, eventually taking the form of sexual advances towards Plaintiff, despite Plaintiff's claims that she told him to stop. *See id.* at ¶¶ 9-13. Plaintiff alleges Defendant Granger's inappropriate behavior continued and became more frequent throughout the first half of 2008. *See id.* at ¶¶ 14-23.

In May and June of 2008, Plaintiff allegedly made numerous complaints to Defendant Keena about Defendant Granger's inappropriate behavior. *See* Dkt. No. 49 at ¶¶ 24-26. Plaintiff alleges that, at one point during this time period, she actually drove to Defendant Keena's

premises to make her complaints. *See id.* at ¶ 24. Plaintiff claims that her alleged conversations with Defendant Keena were not encouraging and that Defendant Keena made no effort to remedy or prevent any of Defendant Granger's harassment. *See id.* at ¶¶ 24-26. Defendant Keena has denied ever receiving "any communication or complaints from [Plaintiff] regarding sexual harassment during her term of employment[.]" *See* Dkt. No. 42-6 at 1. After these alleged interactions with Defendant Keena, Plaintiff alleges that Defendant Granger's harassment continued and became even more frequent. *See* Dkt. No. 49 at ¶¶ 27-36.

On August 25, 2008, Defendant B.G. Lenders Service terminated Plaintiff. *See* Dkt. No. 47 at ¶ 19; Dkt. No. 42-2 at 1. Plaintiff's "Employee Termination Form" was completed by Defendant Keena and printed on Defendant Keena's letterhead. *See* Dkt. No. 47 at ¶ 19; Dkt. No. 42-2 at 1. Plaintiff claims she received notice of her termination the next day. *See* Dkt. No. 49 at ¶ 37. Plaintiff alleges that a letter notifying her of her termination came from Defendant B.G. Lenders Service's attorney and claims that it did not mention Defendant Keena. *See id.* Defendant Keena does not claim that Plaintiff ever received a copy of the "Employee Termination Form[.]" *See* Dkt. No. 47 at ¶¶ 19-21; Dkt. No. 42-1 at ¶ 6. Defendant Granger signed the "Employee Termination Form[,]" but Plaintiff never signed it, even though there is a line at the bottom marked "Employee's Signature[.]" *See* Dkt. No. 42-2 at 1. Defendants claim that Plaintiff was terminated for "falsifying timecards and business records." *See* Dkt. No. 47 at ¶ 19. Plaintiff, however, claims that she was fired for complaining about Defendant Granger's alleged harassment. *See* Dkt. No. 42-3 at 2; Dkt. No. 42-4 at 1; Dkt. No. 53-4 at 2.

On January 9, 2009, Plaintiff allegedly spoke with Defendant Keena to collect her employee tax records and to further complain about Defendant Granger. *See* Dkt. No. 49 at ¶ 38. Defendant Keena denies that this communication ever took place. *See* Dkt. No. 42-10 at ¶ 37. At

the very least, Plaintiff received her 2008 W-2 form from Defendant Keena at some point in early 2009.  *See* Dkt. No. 47-1 at 3.

**B.      Defendant B.G. Lenders Service's Relationship with Defendant Keena**

"Beginning in or around July 2004 through December 2009," Defendant Keena and Defendant B.G. Lenders Service were part of a co-employer relationship.  *See* Dkt. No. 47 at ¶ 2. After December 2009, Defendant Keena and Defendant B.G. Lenders Service ended their co-employer relationship and entered into an "Administrative Services Organization" agreement from January 1, 2010 to January 1, 2011.  *See* Dkt. No. 42-10 at ¶ 6 n.1.  Any differences between a co-employer relationship and an Administrative Services Organization are not relevant to Defendant Keena's motion for summary judgment.  At the time of Plaintiff's termination, Defendant Keena and Defendant B.G. Lenders Service were co-employers, as per their co-employer agreement (the "Agreement") "executed on or around February 27, 2008, and . . . effective through December 31, 2009."  *See* Dkt. No. 47 at ¶ 6; *see generally* Dkt. No. 42-11.  It is this Agreement that is pertinent to this motion.

Defendant Keena claims that, according to the Agreement, it "was responsible for providing payroll, benefits management, and human resources services to B. G. Lenders Service[.]"  *See* Dkt. No. 47 at ¶ 8.  Each of these functions is outlined in detail in the Agreement. Defendant Keena was responsible for paying out wages to the co-employees working at Defendant B.G. Lenders Service and for withholding payroll taxes for those co-employees.  *See* Dkt. No. 42-10 at ¶ 9; Dkt. No. 42-11 at 6-7, § V(A)-(E).  Defendant Keena "[bore] sole responsibility for the payment, from its own account, of all applicable wages and payroll taxes with respect to the Employees[.]"  *See* Dkt. No. 42-11 at 4, § III(D).  In exchange, Defendant B.G.

5

Lenders Service was responsible "to pay for services rendered prior to the release of each payroll, including sufficient funds to cover gross wages, [Keena's] service fee, contributions to employee benefits, and any applicable workers' compensation charges." *See id.* at 22, Ex. B. Defendant Keena also "provided and administered contractually agreed-upon benefit programs to employees working at B.G. Lenders Service." *See* Dkt. No. 42-10 at ¶ 10. These benefits consisted of, among other things, an employee health plan. *See* Dkt. No. 42-11 at 7, § VI(E); *id.* at 33-39, Exs. E & E-1. Defendant B.G. Lenders Service was similarly responsible for making appropriate payments to Defendant Keena for administering these plans. *See id.* at 22, Ex. B.

Defendant Keena's human resources services included "[e]mployee complaint and dispute resolution[,]" "interpretation of and compliance with local, state and federal employment laws and regulations[,]" and "[t]raining workshops covering employment law compliance, safety." *See* Dkt. No. 42-11 at 40, Ex. F. In the event that any employee complaints resulted in litigation or administrative inquiries, the Agreement required Defendant B.G. Lenders Service to keep Defendant Keena informed of all pending actions so that the Defendants could cooperate in resolving the employee's claim. *See id.* at 13-14, § IX(L). Finally, Defendant Keena also "create[d] and maintain[ed] personnel files on all Employees." *See id.* at 11, § VIII(F); Dkt. No. 42-10 at ¶ 12.

Defendant Keena not only provided human resources services to Defendant B.G. Lenders Service, it also reserved a great deal of authority over personnel decisions. The Agreement gave Defendant Keena "the authority to hire all Employees assigned to [B.G. Lenders Service], subject to the terms of any collective bargaining agreement which may exist." *See* Dkt. No. 42-11 at 5, § IV(A). Defendant Keena also "retain[ed] a right of direction and control of the Employees consistent with its role as a co-employer of the Employees." *See id.* at 5, § IV(B). Defendant

B.G. Lenders Service, on the other hand, retained "control over (i) the day-to-day job duties of the Employees, and (ii) the worksite at which, or from which, the Employees perform services." *See id.* at 6, § IV(B). According to this division of authority, Defendant Keena reserved "the right to terminate the employment of an Employee with [Keena] or to reassign the Employee to another Client [other than B.G. Lenders Service]." *See id.* at 6, § IV(D).

Defendant Keena claims that it had no "ownership interests in, or financial control of B.G. Lenders Service, [nor did] B.G. Lenders Service have any ownership interests in, or financial control of Keena." *See* Dkt. No. 42-10 at ¶ 10. Similarly, Defendant Keena claims "[t]here has never been any overlap or commonality of owners, management executives, or officers between Keena and B. G. Lenders Service, nor has there ever been any comingling [sic] of assets or funds between the entities." *See* Dkt. No. 43 at ¶ 12.[2]

Defendant Keena claims that it "and B.G. Lenders Service do not accept any responsibility or liability for the other's business operations, employees, personnel policies, or other action [sic] by virtue of this relationship[.]" *See* Dkt. No. 43 at ¶ 11. Plaintiff disputes this assertion. *See* Dkt. No. 47 at ¶ 11. The Agreement explicitly states that neither Defendant Keena nor Defendant B.G. Lenders Service is authorized to act as an agent of the other. *See* Dkt. No. 42-11 at 1, § I.

---

[2] Plaintiff disputes this characterization, drawing the Court's attention to the section of the Agreement labeled "Client Service Fees[.]" *See* Dkt. No. 47 at ¶ 12; Dkt. No. 42-11 at 3-5, § III(A)-(H). This section simply explains the payments owed by Defendant B.G. Lenders Service in exchange for Defendant Keena's services. *See* Dkt. No. 42-11 at 3-5, § III(A)-(H). Plaintiff claims that it does not establish any joint hierarchy of management that governs the business decisions of the two companies. *See id.* It does not establish any shared funds from which each Defendant pays into and is allowed to withdraw from. *See id.* In fact, Defendant Granger chose to provide collateral for any late payments Defendant B.G. Lenders Service might make through an Automated Clearinghouse and a personal guaranty. *See id.* at 22-26, Exs. B & B-1. Defendants Granger and B.G. Lenders Service chose this option instead of paying a security deposit or giving Defendant Keena the authority to initiate wire transfers from Defendant B.G. Lenders Service's account. *See id.* This further demonstrates the extent to which commonality of funds or assets between Defendants was avoided.

The Agreement also has a lengthy section that provides each Defendant with various types of indemnification to protect against damages brought on by the other Defendant. *See id.* at 14-16, § X(A)-(G). These indemnity provisions extended to "any and all claims made by Employees resulting from any . . . charges of discrimination; wrongful termination, or other labor-related causes of action; and claims of sexual harassment." *See id.* at 15, § X(A). These provisions related to damage allocation do not, however, change the fact that Defendants pledged to cooperate in resolving these types of employee claims. *See id.* at 13-14, § IX(L).

**C.     Plaintiff's Professional Relationship with Defendant Keena**

Plaintiff and Defendants agree that Plaintiff worked as the office manager for Defendant B.G. Lenders Service, but her actual duties at that position have been a matter of some debate. Dkt. No. 47 at ¶ 3. The Agreement states that "[n]o person shall become an Employee unless such person is hired by PEO[3] as an Employee." Dkt. No. 42-11 at 5, § IV(A). This makes the circumstances surrounding Plaintiff's hiring appear atypical. Plaintiff was hired after responding to a newspaper advertisement posted by Defendant B.G. Lenders Service. Dkt. No. 42-13 at 1. Defendant Keena was not present during this interview. *Id.* In fact, Defendant B.G. Lenders Service told the EEOC that Plaintiff was never employed or supervised by Defendant Keena. *See id.* Plaintiff does not dispute the setting of her interview but describes her employment status as "hired through Keena Staffing by Defendant Granger for employment." Dkt. No. 49 at ¶ 5.

Plaintiff's day-to-day duties as Office Manager have been vigorously contested by the parties. Defendant Keena alleges that "Plaintiff had regular communication with Keena . . .

---

[3] In the Agreement, Defendant Keena is referred to as "PEO," which stands for "Professional Employer Organization."

regarding B.G. Lenders Service's payroll changes for new hires and terminations, and other employment matters such as employee benefits and workers' compensation claims." *See* Dkt. No. 47 at ¶ 17. Since Plaintiff allegedly performed these functions, Defendant Keena asserts that "Plaintiff was fully aware of the relationship between Keena and B.G. Lenders Service." *See id.* Plaintiff denies performing these duties outside of "a brief two week period during which [she] called payroll in[.]" *See* Dkt. No. 49 at ¶ 4. For the remainder of her employment with Defendant B.G. Lenders Service, Plaintiff has described her office responsibilities as "all clerical duties as requested." *See id.*

Defendant Keena has provided seven different forms printed on its letterhead, each of which is filled out by Plaintiff and bears her signature. *See* Dkt. No. 42-14 at 1-8. These forms are dated fairly sporadically and span a period between July 31, 2007 and May 8, 2008. *See id.* The series of forms contains the following: an "Employee Information Packet" for another employee, an "Employee Termination Form" for another employee, two hourly wage increase forms for two other employees, an "Accident/Incident Investigation Report" for another employee's accident, an email address change notification for Plaintiff, and Plaintiff's request to change the automatic deductions taken from her paycheck. *See id.* These forms establish that Plaintiff sent Defendant Keena information about Defendant B.G. Lenders Service's employees outside of the alleged two-week period. Defendant Keena has not provided any other direct correspondence between itself and Plaintiff.

Defendant Keena also alleges that Plaintiff was responsible for distributing an employee handbook ("the Handbook") to all of Defendant B.G. Lenders Service's employees. *See* Dkt. No. 43 at ¶ 18. The Handbook outlines the relationship between Defendant B.G. Lenders Service and Defendant Keena and allegedly encourages employees to contact Defendant Keena about any

instances of workplace harassment. *See id.* at ¶ 14. Plaintiff, however, denies ever seeing, receiving, or distributing the Handbook. *See* Dkt. No. 47 at ¶ 18; Dkt. No. 49 at ¶¶ 6-7. Defendant Keena has provided the Court with a copy of the Handbook but has provided no other evidence to support its allegations that Plaintiff ever had a copy of the Handbook for her own reference or that she ever distributed it to any other employees. *See generally* Dkt. No. 42-12.

A welcome letter at the beginning of the Handbook briefly describes the Defendants' co-employer relationship. *See* Dkt. No. 42-12 at 3. The letter explains that "[y]ou will continue to do the same job as before, however your checks will be issued by Keena Staffing who becomes the employer of record for collection and payment of payroll taxes, unemployment insurance management, and certain other purposes." *See id.* Some portions of the Handbook encourage employees to contact Defendant Keena with any questions. *See id.* at 18, 24, 26. For example, the Handbook's section on retirement plans reads, "Consult with the Benefits Manager @ Keena Staffing for details concerning retirement plan options." *See id.* at 18. The section of the Handbook dealing with workplace discrimination and harassment, however, first instructs employees that they may contact their supervisor at Defendant B.G. Lenders Service about their concerns. *See id.* at 8. It then tells employees that, "[i]f you choose, you may make your complaint directly to the Director of Human Resources or President at Keena Staffing." *See id.* Finally, this section of the Handbook also informs employees that they can make complaints about workplace discrimination or harassment to the EEOC.

## D.  Administrative and Procedural History

Towards the end of Plaintiff's employment with Defendant B.G. Lenders Service, specifically "in the summer of 2008," Plaintiff "was a party to a Family Court child support

matter." *See* Dkt. No. 53-4 at 1-2.  Plaintiff was represented in this case by her attorney, Karen

Judd ("Judd"), from the Law Offices of Newell & Klingebiel.  *See id.* at 1-3.  Newell &

Klingebiel specializes primarily in "Matrimonial Law, Personal Injury, and Social Security

Disability[.]" *See* <u>Experienced and Diligent Glens Falls Attorneys</u>, Law Offices of Newell and

Klingebiel, www.newellandklingebiel.com (last visited Sept. 25, 2013).  Judd's specific practice

areas are identified as "Matrimonial law, Family law, Divorce, Adoptions, [and] Separations[.]"

Nowhere on the Newell & Klingebiel website does it mention that the firm has any experience in

employment law.

Plaintiff filed a "Charge of Discrimination" with the EEOC on December 8, 2008, naming

only Defendant B.G. Lenders Service as a respondent.  *See* Dkt. No. 42-3 at 2.  This charge was

dual-filed with the New York State Division of Human Rights ("NYSDHR").  *See id.* at 2.  Judd

represented Plaintiff when she filed this charge.  *See id.* at 1.  Defendant B.G. Lenders Service

responded to this charge on January 1, 2009, at which point it informed the EEOC that it "lease[d]

employees from Keena Staffing a professional Employer Services company." *See* Dkt. No. 53-3

at 1-2.  A copy of this response was sent to Plaintiff on April 24, 2009.  *See* Dkt. No. 53-2 at 1.

Judd acknowledged having viewed a copy of the response herself in a subsequent letter to the

EEOC.  *See* Dkt. No. 53-4 at 1.

On August 24, 2009, the EEOC received an "Amended Charge of Discrimination" from

Plaintiff naming both Defendant B.G. Lenders Service and Defendant Keena as respondents.  *See*

Dkt. No. 42-4 at 1-2.  This charge was likewise dual-filed with the NYSDHR.  *See id.* at 1.  The

Court has not been provided a copy of any cover letter from Judd, similar to the one

accompanying Plaintiff's initial EEOC charge.  *Compare* Dkt. No. 42-4 at 1-2, *with* Dkt. No. 42-3

at 1.  On September 15, 2009, Defendant B.G. Lenders Service submitted another letter to the

EEOC, this time denying the amended charges. *See* Dkt. No. 42-13 at 1-2. Defendant Keena did the same on September 16, 2009. *See* Dkt. No. 42-6 at 1.

On September 30, 2011, the EEOC issued a determination finding that "there is reasonable cause to believe" that Defendant B.G. Lenders Service and Defendant Keena were responsible for harassing Plaintiff. *See* Dkt. No. 42-7 at 1-2. This determination announced the EEOC's intent to enter into a voluntary conciliation process between the Plaintiff and Defendants. *See id.* at 2. On December 23, 2011, the EEOC sent each of the parties a letter explaining that the conciliation efforts had failed and would not be continued. *See* Dkt. No. 42-8 at 1. The EEOC simultaneously informed Plaintiff that she had a right to sue Defendants. *See* Dkt. No. 42-9 at 1.

Pursuant to the EEOC's "Notice of Right to Sue[,]" Plaintiff filed a complaint with this Court against Defendants B.G. Lenders Service, Keena, and Granger. *See* Dkt. No. 42-9 at 1; Dkt. No. 1. Currently before the Court is Defendant Keena's motion for summary judgment.

### III. DISCUSSION

**A.    Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Even though additional concerns must be kept in mind, summary judgment in employment discrimination cases is by no means forbidden. "Summary judgment applies no less to Title VII cases and 'is still fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case.'" *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 287 (S.D.N.Y. 1999) (quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998)); *see also Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citations omitted).

**B.     Title VII Claims**

*1. Title VII Filing Requirement Generally*

It is well-established that before filing a Title VII claim in federal court, a plaintiff needs

to first exhaust all of his or her administrative remedies. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-5(e) (2001)) (other citations omitted). In order to comply with Title VII's administrative requirements, a charge of discrimination or harassment generally must be filed with the EEOC within 180 days of the alleged unlawful employment practice or condition. *See* 42 U.S.C. § 2000e-5(e)(1). In states in which a state or local agency has overlapping authority to investigate such claims, the plaintiff's filing deadline is extended to 300 days. *See id.* Since New York has its own employment discrimination agency, a plaintiff filing discrimination or harassment charges with the EEOC must meet the 300-day filing deadline. *See Morales v. New York State Dep't of Labor*, 865 F. Supp. 2d 220, 239 (N.D.N.Y. 2012) (citing *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam)).

Initially, Plaintiff appears not to have filed a timely charge with the EEOC naming Defendant Keena. On December 8, 2008, the EEOC received a "Charge of Discrimination" from Plaintiff. *See* Dkt. No. 42-3 at 2. This charge mentioned only Defendant B.G. Lenders Service and alleged that its owner, Defendant Brian Granger, subjected Plaintiff to sexual harassment, which culminated in her August 25, 2008 termination. *See id.*; Dkt. No. 42-2 at 1. On August 24, 2009, the EEOC received an "Amended Charge of Discrimination" from Plaintiff, which added Defendant Keena as a respondent, alleging that "Keena Staffing personnel were made aware of the sexual harassment that I was being subjected to by the owner Mr. Granger, but failed to take appropriate action." *See* Dkt. No. 42-4 at 1-2. Plaintiff's termination by Defendant B.G. Lenders Service is the last act of harassment with which the amended charge alleges that Defendant Keena was involved. *See id.* at 2.

Since Plaintiff was terminated on August 25, 2008, the 300-day filing requirement would require her to file a charge with the EEOC by June 21, 2009, for any harassment culminating in

her termination. Plaintiff's initial charge naming Defendant B.G. Lenders Service, received by the EEOC on December 8, 2008, was, therefore, timely filed. Plaintiff's amended charge naming Defendant Keena, filed on August 24, 2009, was, however, not timely according to the 300-day rule. In order to comply with the 300-day deadline, Defendant Keena's alleged discriminatory or harassing actions would have to occur on or after October 28, 2008.

Under most circumstances, "when a plaintiff fails to file a timely charge with the EEOC, the claim is time barred." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). While plaintiffs generally must comply with Title VII's procedural requirements, the "filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). A cursory review of compliance with the EEOC's filing requirements, therefore, does not end the Court's consideration of Plaintiff's Title VII claim against Defendant Keena. In fact, there are three exceptions to the general administrative filing deadline that potentially allow Plaintiff's Title VII claim against Defendant Keena to proceed in federal court: (1) equitable tolling, (2) the "relation back" standard for amended charges, and (3) the identity of interest exception.

### 2. *Equitable Tolling*

Equitable tolling has been allowed "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnote omitted).

Equitable tolling is also proper when the plaintiff "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (citation omitted) (internal quotation marks omitted). Mistakes made by a plaintiff's attorney, however, are almost never an adequate basis for equitable tolling. *See Smaldone v. Senkowski*, 273 F.3d 133, 138-39 (2d Cir. 2001) (per curiam); *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47-48 (2d Cir. 1978) (denying equitable tolling for a late filing with the EEOC because the party seeking equitable tolling was represented by counsel at the time of the filing); *Pollock v. Chertoff*, 361 F. Supp. 2d 126, 130-31 (W.D.N.Y. 2005) (same); *Comfort v. Rensselaer Polytechnic Inst.*, 575 F. Supp. 258, 260-61 (N.D.N.Y. 1983) (same); *but see Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512-14 (2d Cir. 2002) (holding that an attorney's inability to perceive the wishes of the client-plaintiff because of the plaintiff's mental illness could be acceptable grounds for equitable tolling if the facts later supported that the client's mental illness was as severe as her attorney claimed). The extreme circumstances in which represented plaintiffs are entitled to equitable tolling do not extend to situations in which a plaintiff's lawyer simply fails to exercise due diligence. *See South v. Saab Cars USA*, 28 F.3d 9, 12 (2d Cir. 1994). The burden for demonstrating that equitable tolling is warranted lies with the plaintiff. *See Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000).

In this case, Plaintiff was represented by her former counsel, Judd, when she filed her first charge with the EEOC on December 4, 2008 naming only B.G. Lenders Service as a respondent. *See* Dkt. No. 42-3 at 1-2. Her counsel's inability to identify Defendant Keena as Plaintiff's co-employer is not an adequate basis for equitable tolling. Even though Plaintiff claims that Defendant Keena was attempting to hide its co-employer status, *see* Dkt. No. 46 at 15,

information of a relationship between Defendant Keena and Defendant B.G. Lenders Service was made available to the EEOC by B.G. Lenders Service as early as January 1, 2009, well within the 300-day filing period. *See* Dkt. No. 53-3 at 1-2. If the information could have been ascertained by the EEOC in that time, there is no reason that it could not have also been discovered by Plaintiff's counsel. Knowledge of this relationship, even if information about its exact nature was actively denied by Defendant Keena, should not have prevented Plaintiff's counsel from investigating and uncovering the co-employer agreement. Further, Plaintiff herself was aware of Defendant Keena's existence, even if she did not know the exact nature of Defendants' relationship. *See* Dkt. No. 42-14 at 1-8. Plaintiff admits that it was her "responsibility to call to report payroll information to the Defendant [Keena]" for at least a two-week period while she worked for Defendant B.G. Lenders Service. *See* Dkt. No. 49 at ¶ 4.

As such, the Court finds that Plaintiff has failed to set forth any circumstance sufficiently extraordinary to justify the application of equitable tolling.


### 3. *Whether Plaintiff's Second EEOC Charge Relates Back to the Initial Charge*

Under some circumstances, an amended charge can make new claims of unlawful employment practices or conditions more than 300 days after the events occurred, so long as the allegations are sufficiently tied to an initial charge made within the 300-day window. According to EEOC regulations, "[a] charge may be amended to . . . clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). If this standard is met, the new allegations in the amended charge are said to properly "relate back" to the timely

allegations in the initial charge. *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 626 (E.D.N.Y. 2012).

The Second Circuit has not explicitly addressed whether an amendment to an EEOC charge which adds an entirely new defendant can ever sufficiently relate back to the original EEOC charge so that it would constitute a valid amendment despite the initial 300-day filing period having elapsed. Some courts in this Circuit have implied that amended charges adding new parties after the 300-day filing period are allowed. A larger body of precedent within the Circuit displays a marked hesitation to explicitly resolve whether such an amendment would be allowed. In particular, when courts have the opportunity to decide whether the defendant, unnamed in the initial EEOC charge, should be included in the subsequent Title VII litigation, the courts have decided the issue based on an identity of interest analysis rather than a "related back" amendment analysis.

As already mentioned, some courts imply that an initial EEOC charge could have been amended after the 300-day filing period in order to add a new defendant, yet they do so without actually dealing with a case in which the initial charge has actually been amended to add the new defendant outside the 300-day period. *Gallagher v. IBEW*, 127 F. Supp. 2d 139, 143 (N.D.N.Y. 2000) (noting that the plaintiff could have amended his initial EEOC charge to add a new defendant at some point in the last thirteen years); *see also Alfano v. Costello*, 940 F. Supp. 459, 466-67 (N.D.N.Y. 1996), *aff'd*, 294 F.3d 365 (2d Cir. 2002) ("[Plaintiff] never attempted to amend her complaint even though it was pending before the agency for more than two years . . ."); *Gilmore v. Local 295, Int'l Bhd. of Teamsters*, 798 F. Supp. 1030, 1038 (S.D.N.Y. 1992) ("Although the plaintiff alleges that he requested the Commission amend his charge to include his final termination from [the named defendant], he does not state that he requested to add the [unnamed defendant] as an additional respondent").

Many other courts in this Circuit have explicitly refused to engage in a "related back" analysis when there was an independent basis, such as the identity of interest exception, for deciding whether it was appropriate for the unnamed party to be included in the pending Title VII litigation. These courts have expressed the concern that, "[t]o impute to one person complaints made against an unrelated party may violate fundamental fairness standards of adequate notice and opportunity to be heard, and may offend as well the underlying purpose of Title VII of encouraging informal conciliation and voluntary compliance." *Gonzalez v. Bratton*, No. 96 Civ. 6330, 2000 U.S. Dist. LEXIS 12002, *76-*77 (S.D.N.Y. Aug. 21, 2000) (citing *Stache v. International Union of Bricklayers and Allied Craftsmen, AFL-CIO*, 852 F.2d 1231 (9th Cir. 1988)) (other citation omitted) (opting instead to analyze the plaintiff's claims according to the identity of interest exception); *see also Dortz v. City of New York*, 904 F. Supp. 127, 143 n.5 (S.D.N.Y. 1995) (same). Other courts have declined to engage in a related back analysis in favor of an identity of interest analysis without taking the time to explicitly state they were doing so. *See Olvera-Morales ex rel. Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 215-16 (N.D.N.Y. 2004) (describing the case's administrative history, which made clear that the plaintiff had amended her EEOC charge to add a new defendant outside the 300-day period, but subsequently only engaging in an identity of interest analysis); *Magill v. Precision Sys. Mfg.*, No. 01-CV-1482, 2002 U.S. Dist. LEXIS 26689, *2-*6 (N.D.N.Y. Sept. 11, 2002). These cases support the conclusion that courts prefer the identity of interest analysis to a related back analysis when considering whether to allow unnamed parties to be added to Title VII claims. The Court shares this preference.

The District of Minnesota recently addressed the issue of whether an amended EEOC charge can be valid while adding a new party outside of the 300-day filing deadline and found

that it can. *See Hile v. Jimmy Johns Highway 55, Golden Valley*, 899 F. Supp. 2d 843, 847-49 (D. Minn. 2012). In "the later summer and fall of 2009," the plaintiff in *Hile*, who had been working as a Domino's Pizza and Pizza Hut delivery driver since 1992, applied for extra work as a delivery driver at five different Jimmy John's franchise stores. *See id.* at 844. Since the plaintiff was deaf, each franchisee declined to hire him on the basis that he would be unable to verbally communicate with the customers. *See id.* at 844-45. In "late 2009," the plaintiff filed a discrimination charge with the EEOC naming only Jimmy John's as a respondent, though he did list the addresses of the five different franchisees as locations where discrimination occurred. *See id.* In January 2012, allegedly at the behest of the EEOC, the plaintiff filed five separate discrimination charges against the different franchisees, all based on the same discriminatory events described in his initial charge. *See id.*

Denying the defendants' motion to dismiss, the court viewed the plaintiff's five January 2012 EEOC charges against the franchisees as amended charges which "relate[d] back" to the plaintiff's initial 2009 EEOC charge against Jimmy John's. *See id.* at 847-49. It did so over the franchisees' protests that the plaintiff failed to cite a single case in which an amended EEOC charge had been permitted to add a new defendant after the 300-day filing deadline. *See id.* at 848. The court decided that the new charges simply made "technical amendments" allowed by 29 C.F.R. § 1601.12(b) and that such amendments properly "relate[d] back" to the plaintiff's initial timely EEOC charge. *See id.* Additionally the court noted that "companies often have complex ownership structures not immediately apparent to outsiders[.]" *Id.* (citation omitted). In order to provide further support for its decision, however, the court stated that "it seems readily apparent that a franchisor and its franchisees have an identity of interest in defending discrimination claims based on the franchisees' conduct . . . ." *Id.* at 848-49.

Since the *Hile* court leaned on the identity of interest exception in deciding that amended EEOC charges filed after the 300-day deadline could name new defendants, it is unclear whether the amended charges would have been allowed if an identity of interest had been found not to exist. In light of this, and the fact that courts in this Circuit are hesitant to find that an amendment adding new defendants relates back to the original EEOC charge, the Court declines to find that Plaintiff's amended EEOC charge relates back to her original charge.

### 4. Identity of Interest Exception

In order to pursue a Title VII claim in federal court, the plaintiff ordinarily must file a charge of discrimination with the EEOC or the appropriate state agency. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)). If the plaintiff fails to name a party in his or her administrative charge, a district court will usually lack subject matter jurisdiction over the claim against the unnamed party. *See Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1023 (S.D.N.Y. 1993). It is, however, well-established law in the Second Circuit that courts take a "flexible stance" in interpreting Title VII's procedural requirements. *See Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 754-55 (2d Cir. 1976).

As a result of the "flexible stance" used to deal with the procedural hurdles of Title VII litigation, the Second Circuit has developed an "identity of interest" exception which allows plaintiffs to bring Title VII claims against a defendant in federal court despite having not named that defendant in their administrative charges. *See Johnson*, 931 F.2d at 209 (citing *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905-06 (7th Cir. 1981), *cert denied*, 455 U.S. 1017, 72 (1982)). The identity of interest exception is comprised of the following four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209-10 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) ("*Glus I*")). These four considerations are factors, not elements, and "no one factor is dispositive." *Husnay v. Enviromaster Int'l Corp.*, 275 F. Supp. 2d 265, 267 (N.D.N.Y. 2003) (citation omitted).

When considering the identity of interest exception, "courts are to evaluate each factor in light of the statutory purposes underlying Title VII." *Dortz*, 904 F. Supp. at 143 (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.), *cert denied*, 449 U.S. 949 (1980) ("*Glus II*")). The statutory purpose of eliminating employment discrimination is not the only relevant consideration. Courts should also remember that "[r]equiring a plaintiff to name all defendants in her EEOC charge fulfills two main goals: 1) providing notice to the charged party of the alleged violation; and 2) securing voluntary compliance with Title VII's mandates." *Clarke v. Flushing Manor Care Ctr.*, No. 02 Civ. 3079, 2003 U.S. Dist. LEXIS 3979, *8 (S.D.N.Y. Mar. 17, 2003) (citation omitted). Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies. *See Jackson v. New York City Transit*, No. 05-CV-1763, 2005 U.S. Dist. LEXIS 25111, *7-*8 (E.D.N.Y. Oct. 17, 2005) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2004)).

### a. Impact of Plaintiff's Representation by Legal Counsel

Though neither party has raised the issue in its brief, many district courts in this Circuit have struggled to decide whether a party represented by counsel at the time of its EEOC filing can take advantage of the identity of interest exception. The Second Circuit Court of Appeals has yet to explicitly address or resolve the issue, but *Johnson*, the case in which the Second Circuit adopted the identity of interest exception, did take note of the fact that many plaintiffs file their EEOC charges *pro se*. *See Johnson*, 931 F.2d at 209 ("[T]hese charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements"). The different district courts diverge on their treatment of represented parties in a Title VII action.

For example, it does not appear that the Western District has ever explicitly denied an identity of interest exception because a plaintiff was represented by legal counsel. In fact, the Western District somewhat recently disavowed imposing such a limitation. *See Wood v. Pittsford Cent. Sch. Dist.*, No. 03-CV-6541T, 2005 U.S. Dist. LEXIS 18063, *10-*13 (W.D.N.Y. Jan. 10, 2005). Even when courts have imposed such a limitation, the limitation only appears to be consistently applied in cases where the party was represented by counsel with experience in Title VII litigation. *See, e.g.*, *Tarr v. Credit Suisse Asset Mgmt.*, 958 F. Supp. 788, 794 n.4 (E.D.N.Y. 1997).

Although the Southern District of New York has often restricted the identity of interest exception to plaintiffs who filed their EEOC charges *pro se*, *see Zustovich v. Harvard Main., Inc.*, No. 08 Civ. 6856, 2009 U.S. Dist. LEXIS 22640, *24 (S.D.N.Y. Mar. 20, 2009); *DelaPaz v. New York City Police Dep't*, No. 01 Civ. 5416, 2003 U.S. Dist. LEXIS 15179, *7-*8 (S.D.N.Y. Aug. 30, 2003), it has also recognized that a lawyer inexperienced in Title VII litigation may still be entitled to raise an identity of interest argument for his or her client. *See Flower v. Mayfair Joint Venture*, No. 95 Civ. 1744, 2000 U.S. Dist. LEXIS 2829, *17 (S.D.N.Y. Mar. 10, 2000). Even in

cases in which the Southern District appeared to apply a categorical bar against represented plaintiffs invoking the identity of interest exception, it has often drawn on the plaintiff's lawyer's experience litigating Title VII claims while doing so. *See Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 390 (S.D.N.Y. 2002) ("[B]ecause [the plaintiff] had the benefit of counsel when he filed his EEOC complaint, *and does not claim that his counsel was unversed in the law*, the identity of interest exception does not apply and his Title VII claims against [the defendants] must be dismissed") (emphasis added); *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2001) (same). As such, these cases appear to leave open the possibility that a represented plaintiff with an inexperienced attorney may still be able to take advantage of the identity of interest exception.

The District of Connecticut recently declined to decide whether a plaintiff's representation by legal counsel is a categorical bar to raising the identity of interest exception. *See Lafferty v. Owens, Schine & Nicola, P.C.*, No. 3:09cv1045, 2012 U.S. Dist. LEXIS 5276, *26-*27 (D. Conn. Jan. 18, 2012). In some past instances, a plaintiff's representation has led to an inability to invoke the identity of interest exception. *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 275 (D. Conn. 2010); *Peterson v. City of Hartford*, 80 F. Supp. 2d 21, 24 (D. Conn. 1999) (citing *Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 476 (S.D.N.Y. 1998)). In other instances, however, the court has undertaken an identity of interest analysis even when the plaintiff was represented. *See Williams v. Quebecor World Infiniti Graphics, Inc.*, No. 3:03CV2200, 2007 U.S. Dist. LEXIS 21194, *7 (D. Conn. Mar. 22, 2007) (citations omitted); *see also Consolmango v. Hosp. of St. Raphael*, No. 3:11cv109, 2011 U.S. Dist. LEXIS 116999, *23 (D. Conn. 2011) (performing an identity of interest analysis but noting, as a separate factor, that plaintiff's having legal counsel "diminish[es] the need to protect her").

Of all the districts in this Circuit, the Northern District of New York has displayed the strongest aversion to treating plaintiff's legal representation at the time of an EEOC filing as a categorical bar to prevailing on the identity of interest exception. *See Olvera-Morales ex rel. Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 216-19 (N.D.N.Y. 2004). Though this District has recognized the Eastern District of New York's and the Southern District of New York's past choices to differentiate between experienced and inexperienced legal counsel, it has concluded that such a differentiation was not central to either district's decision not to use legal counsel as a categorical bar to the identity of interest exception. *See id.* at 216-17 nn.2-3. In fact, this District has allowed for an identity of interest exception even when the plaintiff was represented by counsel "experienced in Title VII actions." *Id.* at 217 n.4.

The Court agrees with the decision in *Olvera-Morales* that a categorical bar is inappropriate. As the *Olvera-Morales* court previously observed, "'the complexities [in Title VII actions] are such that an inexperienced Title VII lawyer is no more competent to deal with the vagaries of this statute's jurisdictional . . . requirements than a layman.'" *Olvera-Morales*, 322 F. Supp. 2d at 217 n.2 (quoting *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 788 (E.D.N.Y. 1999)). The Court finds that a case-by-case evaluation of the circumstances in light of the *Johnson* factors, as opposed to a categorical ban, far better advances the goals and purposes of Title VII.

Having reviewed the applicable law, the Court finds that it would not be appropriate for a counsel's relative experience or inexperience with Title VII claims to have any bearing on whether a plaintiff is entitled to application of the identity of interest exception. *See Olvera-Morales*, 322 F. Supp. 2d at 216-19. It should not be ignored, however, that the Second Circuit has clearly articulated that the purpose of the identity of interest exception is to protect "parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements . . . ."

*Johnson*, 931 F.2d at 209; *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (quoting *Johnson*, 931 F.2d at 209).  Taking this purpose into account, coupled with the substantial weight of precedent from other districts within the Circuit, the Court is persuaded that a plaintiff's representation by counsel is not altogether irrelevant to an identity of interest inquiry. *See Consolmango*, 2011 U.S. Dist. LEXIS 116999 at *23; *Cole v. Cent. Park Sys.*, No. 09-CV-3185, 2010 U.S. Dist. LEXIS 99173, *17 (E.D.N.Y. Sept. 20, 2010); *Darden*, 191 F. Supp. 2d at 390; *Gagliardi*, 137 F. Supp. 2d at 379.

The Court finds persuasive the approach taken in *Manzi* that a plaintiff's legal representation at the time of his or her EEOC filing is informative when considering the first and fourth *Johnson* factors.  *See Manzi*, 62 F. Supp. 2d at 787-88.  The first factor deals with the plaintiff's lack of knowledge of potential parties against whom EEOC charges may be filed. *Johnson*, 931 F.2d at 209.  The fourth factor deals with plaintiff's confusion resulting from misleading representations made to the plaintiff by his or her employer(s).  *See id.* at 210.


### b.  *Application of Standard to Plaintiff's Case*

When Plaintiff filed her first "Charge of Discrimination" with the EEOC, the one received on December 8, 2008, naming only Defendant B.G. Lenders Service, she was represented by Judd of the "Law Offices of Newell & Klingebiel."  *See* Dkt. No. 42-3 at 1-2.  Plaintiff's "Amended Charge of Discrimination" was received by the EEOC on August 24, 2009.  *See* Dkt. No. 42-4 at 1.  This amended charge was not accompanied by a cover letter from Plaintiff's attorney, as was the initial charge.  *Compare* Dkt. No. 42-4 at 1-2, *with* Dkt. No. 42-3 at 1.  Still, it is clear that Plaintiff was still represented by Judd at the time this amended charge was filed because Judd was sent a copy of the EEOC's "Notice of Right to Sue[,]" which was mailed on December 23, 2011.

*See* Dkt. No. 42-9 at 2.

Once it has been ascertained that a plaintiff was represented by legal counsel at the time of an EEOC filing, it is useful to investigate the relative experience such counsel had in dealing with Title VII litigation. Judd represented Plaintiff in "a Family Court child support matter[]" during the "summer of 2008[.]" *See* Dkt. No. 53-4 at 2. It is unclear how long that proceeding lasted, and it is unclear at what point Plaintiff began contemplating filing charges with the EEOC. Plaintiff's employment with Defendant B.G. Lenders Service was terminated on or about August 25, 2008. *See* Dkt. No. 47 ¶¶ 3-4. Plaintiff claims that she received a notice from an attorney representing Defendant B.G. Lenders Service on August 26, 2008, informing her that she had been terminated. *See* Dkt. No. 49 at ¶ 37. It is entirely possible, if not likely, that Judd's involvement with Plaintiff's EEOC proceedings was the result of her representation of Plaintiff in the Family Court proceedings. Judd's law firm specializes in "Matrimonial Law, Personal Injury, and Social Security Disability[.]" *See* <u>Experienced and Diligent Glens Falls Attorneys</u>, Law Offices of Newell and Klingebiel, www.newellandklingebiel.com (last visited Sept. 25, 2013). Judd's specific practice areas are identified as "Matrimonial law, Family law, Divorce, Adoptions, [and] Separations[.]" Since there is evidence that Judd did not regularly deal with Title VII claims, it can be inferred that she had very little experience, if any at all, with "the vagaries of Title VII and its jurisdictional and pleading requirements . . . ." *Johnson*, 931 F.2d at 209. As such, Plaintiff's representation, while relevant to the first and fourth *Johnson* factors, does not weigh against her as heavily as it might if Judd had been highly experienced in Title VII litigation.

### c. *Defendant Keena's Actual Notice of the EEOC Charge*

As the Second Circuit has noted, there are two primary purposes served by filing with the EEOC prior to pursuing a Title VII claim: (1) it notifies potential defendants that the charging party is alleging workplace discrimination, and (2) it gives potential defendants the opportunity to voluntarily comply with Title VII's mandates without having to enter into litigation. *See Vital*, 168 F.3d at 619 (quoting *Eggleston*, 657 F.2d at 905). The Northern District of New York has consistently acknowledged these functions as the primary purposes of the EEOC filing requirement. *See Husnay*, 275 F. Supp. 2d at 267 ("Plaintiffs are not allowed to add previously unnamed defendants to their Title VII claims because defendants would be denied both early notice and the opportunity for voluntary compliance with Title VII mandates in avoidance of litigation") (citations omitted); *Magill*, 2002 U.S. Dist. LEXIS 26689 at *3. Since the first of these goals is providing notice to the potential defendants, many courts consider an unnamed defendant's actual notice of EEOC charges when performing an identity of interest analysis.

In some infrequent instances, district courts in this Circuit have interpreted actual notice as a separate requirement that must be met in addition to the plaintiff's satisfaction of the four-factor identity of interest exception. *See Carcasole-Lacal v. Am. Airlines, Inc.*, No. CV-02-4359, 2003 U.S. Dist. LEXIS 11507, *16 (E.D.N.Y. July 8, 2003); *Moscowitz v. Brown*, 850 F. Supp. 1185, 1192 (S.D.N.Y. 1994). This approach has, however, been explicitly rejected and is not used by most courts in this Circuit. *See, e.g.*, *Malik v. Pakistan Int'l Airlines Corp.*, No. 92 Civ. 9023, 1995 U.S. Dist. LEXIS 10233, *17 (S.D.N.Y. June 5, 1995) ("Although actual notice of the EEOC charge may be pertinent to a determination of an 'identity of interest,' it is not, as defendant maintains, an additional requirement"). In fact, other district courts throughout the Circuit have, in other infrequent instances, held or implied that if the unnamed defendant had actual notice of the alleged discrimination during the EEOC proceedings, then an identity of interest exists and

analyzing the four separate *Johnson* factors is unnecessary. *See Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 167 (E.D.N.Y. 2005); *Agugliaro v. Brooks Bros.*, 802 F. Supp. 956, 960-61 (S.D.N.Y. 1992). This approach is also rejected in most instances.

Most courts in this Circuit treat the existence of actual notice to the unnamed defendant as being relevant to the factor analysis. Under this approach, actual notice is relevant to the third *Johnson* factor, which measures whether the defendant suffered any actual prejudice by not being named specifically as a respondent in the plaintiff's EEOC charge. *See Johnson*, 931 F.2d at 210; *see also Tarr*, 958 F. Supp. at 795 ("The third factor subsumes the underlying issue of notice. Courts have held that a plaintiff's failure to name or include a party in the agency complaint does not prejudice that party where it had notice of the claims against it and the opportunity to intervene") (citation omitted); *see Zhao v. State Univ. of New York*, 472 F. Supp. 2d 289, 306 (E.D.N.Y. 2007); *Parker v. City of New York*, No. 04 CV 2257, 2004 U.S. Dist. LEXIS 23526, *11 (E.D.N.Y. Nov. 18, 2004).

Since the Second Circuit has only ever articulated four identity of interest factors, the Court finds that the issue of actual notice is most properly considered as a component of the third *Johnson* factor. Choosing not to consider actual notice as a separate factor should not, however, be interpreted as diminishing the importance of actual notice. Courts have always recognized that the four *Johnson* factors are a proxy for measuring the defendant's notice its ability to reconcile the plaintiff's complaints without litigation. *See Husnay*, 275 F. Supp. 2d at 267 (citations omitted); *Magill*, 2002 U.S. Dist. LEXIS 26689 at *3 (citations omitted); *Vital*, 168 F.3d at 619 (citation omitted).

### d.  Application of Identity of Interest Exception

### i. Whether Plaintiff Should Have Known to Name Defendant Keena

The first *Johnson* factor asks "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint[.]" *Johnson*, 931 F.2d at 209 (quoting *Glus I*, 562 F.2d at 888). The fact that Plaintiff was represented by legal counsel during the EEOC's administrative process is relevant to assessing this factor. *See Manzi*, 62 F. Supp. 2d at 787-88 (holding that the plaintiff's representation by legal counsel was something to be considered when analyzing the first and fourth *Johnson* factors).

When analyzing this factor, it must be kept in mind that Plaintiff ultimately did name Defendant Keena in her "Amended Charge of Discrimination" received by the EEOC on August 24, 2009. *See* Dkt. No. 42-4 at 1-2. In addition to naming Defendant Keena as one of her employers, Plaintiff wrote the following in the body of the amended charge: "Upon information and belief, Keena Staffing personnel were made aware of the sexual harassment that I was being subjected to by the owner Mr. Granger, but failed to take appropriate action." *See id.* The remaining paragraphs of the body of the amended charge discussed Defendant B.G. Lenders Service and Defendant Granger. *See id.* The existence of the amended charge proves that it was, at some point, possible for Plaintiff to discern Defendant Keena's role and name it in an EEOC charge. The question for the first *Johnson* factor, therefore, becomes whether Defendant Keena's role could have been determined within 300 days of Plaintiff's termination.

Defendant Keena argues that Plaintiff's amended charge proves that Plaintiff knew of Defendant Keena's existence at all relevant times. *See* Dkt. No. 43-1 at 16. Defendant Keena also argues that Plaintiff's alleged complaints made to Defendant Keena about Defendant Granger's harassment substantiates this proof. *See id.* Plaintiff admits to these complaints in the

body of her amended charge. *See* Dkt. No. 42-4 at 2; Dkt. No. 49 at ¶¶ 25-26. Plaintiff alleges

that, on June 20, 2008, she drove to Defendant Keena's premises to retrieve her employee file and

to make complaints about Defendant Granger. *See id.* at ¶ 24. Plaintiff alleges that she also made

complaints to Defendant Keena after her termination, though Defendant Keena denies that these

occurred and claims it had no additional contact after Plaintiff's termination. *See* Dkt. No. 47 at

¶¶ 21, 43. Plaintiff denies this and claims that Defendant Keena contacted her in January 2009 by

sending her a W-2 form, of which she has provided a copy. *See* Dkt. No. 47-1 at 3. Plaintiff

alleges that she communicated further complaints of discrimination, specifically complaints about

her tax forms, to Defendant Keena around that time. *See* Dkt. No. 47 at ¶ 21; Dkt. No. 49 at ¶ 38.

     Plaintiff herself has alleged and supplied some proof that she made a number of

complaints about her employment directly to Defendant Keena. *See* Dkt. No. 49 at ¶¶ 24-26.

Defendant Keena is, therefore, correct that Plaintiff knew about its existence. *See Johnson*, 931

F.2d at 210 (supporting its holding that the first factor weighed in favor of the unnamed defendant

by indicating that the plaintiff had written to the unnamed defendant to make complaints about

the named defendant's behavior); *Carcasole-Lacal*, 2003 U.S. Dist. LEXIS 11507 at *18 (same).

Defendant Keena is on less certain ground, however, in its claims that Plaintiff understood

Defendant Keena's *role* in the alleged discrimination. The plaintiff's understanding of an

unnamed defendant's role is essential to a court's finding that complaints made to the unnamed

defendant demonstrate that the first *Johnson* factor weighs in favor of the unnamed defendant.

*See Johnson*, 931 F.2d at 210; *Carcasole-Lacal*, 2003 U.S. Dist. LEXIS 11507 at *17-*18

(finding that the plaintiff knew that the unnamed defendant had purchased certain assets and

liabilities, but not others, from the named defendant). Without an understanding of the unnamed

defendant's discriminatory role, a plaintiff may reasonably omit that defendant from an EEOC

charge, even if he or she knew of the unnamed defendant's identity.

If Plaintiff did not know what relationship Defendant Keena and Defendant B.G. Lenders Service had, then her complaints to Defendant Keena, standing alone, do not compel a decision that the first *Johnson* factor weighs in Defendant Keena's favor.  In all her descriptions of the complaints she made to Defendant Keena, Plaintiff never describes asking Defendant Keena for any specific relief against Defendant B.G. Lenders Service.  *See* Dkt. No. 49 at ¶¶ 24-26, 38. Potentially believing that Defendant Keena held no authority over the employees of Defendant B.G. Lenders Service, Plaintiff might have doubted that Defendant Keena played any official role in the discrimination against her, which could reasonably have led to her declining to mention Defendant Keena in her first amended charge to the EEOC.  *See* Dkt. No. 42-3 at 2.  Further, Plaintiff could have reasonably believed that Defendant Keena had no authority over Defendant Granger since he owns Defendant B.G. Lenders Service.

In arguing that Plaintiff understood Defendant Keena's role in the business hierarchy, Defendant Keena claims that it signed and issued Plaintiff's paychecks and that Plaintiff's "Employee Termination Form" was sent on Defendant Keena's letterhead.  *See* Dkt. 43-1 at 17. Defendant Keena also claims that it was responsible for issuing W-2 forms to all of Defendant B.G. Lenders Service's employees.  *See* Dkt. No. 42-10 at ¶ 9.  This is consistent with the "Wages and Payroll Taxes" responsibilities delegated to Defendant Keena in its agreement with Defendant B.G. Lenders Service.  *See* Dkt. No. 42-11 at 6-7.

Even if Defendant Keena's name appeared on every one of Plaintiff's paychecks, it does not necessarily follow that Plaintiff would have known the exact relationship between Defendant Keena and Defendant B.G. Lenders Service.  Signing payroll checks does not necessarily entail authority to discipline or terminate employees, an authority that Plaintiff would want to know

Defendant Keena had before naming it in an EEOC charge. The appearance of Defendant Keena's name on Plaintiff's "Employee Termination Form" does, however, indicate the authority to discipline or terminate employees. Plaintiff, however, alleges that she only ever received a letter from Defendant B.G. Lenders Service's attorney notifying her of her termination and further alleges that the letter did not even mention Defendant Keena. *See* Dkt. No. 49 at ¶ 37. Plaintiff's signature does not appear on the "Employee Termination Form[,]" even though there is a field labeled "Employee's Signature" at the bottom of the page. *See* Dkt. No. 42-2 at 1. These facts, plus the fact that Defendant Keena does not claim that Plaintiff ever received a copy of the "Employee Termination Form[,]" therefore, are not probative in deciding whether Plaintiff had enough information to name Defendant Keena in a timely EEOC charge. *See* Dkt. No. 47 at ¶¶ 19-21; Dkt. No. 42-1 at ¶ 6.

Defendant Keena also argues that, as a result of Plaintiff's "management position," she knew about the co-employer relationship between Defendants Keena and B.G. Lenders Service and that she, therefore, knew about Defendant Keena's role in the alleged discrimination. *See* Dkt. No. 43-1 at 17. Generally, if the plaintiff holds a management position, it suggests that he or she understands the company hierarchy and should be aware of the possible defendants in an employment discrimination action. *See Husnay*, 275 F. Supp. 2d at 267. Plaintiff concedes that her title was "Office Manager," but there is otherwise little consensus as to what her official role was within the company. *See* Dkt. No. 49 at ¶ 4. Without knowing Plaintiff's substantive duties, there is little basis for treating her in typical management fashion with respect to the first *Johnson* factor.

Defendant Keena claims that Plaintiff's job required her to regularly contact Defendant Keena to handle "B.G. Lenders Service's payroll, payroll changes for new hires and terminations,

and other employment matters such as employee benefits and workers' compensation claims."
*See* Dkt. No. 42-10 at ¶ 32. Plaintiff denies this characterization and instead claims that, "[w]ith
the exception of a brief two week period during which I called payroll in, at no other time during
the course of my employment with Defendant BG Lenders Service was it my responsibility to call
to report payroll information to the Defendant Keena Staffing." *See* Dkt. No. 49 at ¶ 4.

Plaintiff's allegation is not supported by the record. Defendant Keena has provided a
series of seven different forms filled out by Plaintiff on dates spanning July 31, 2007, and May 8,
2008, well over two weeks. *See* Dkt. No. 42-14 at 1-8. These forms were allegedly intended for
Defendant Keena, and they are on Defendant Keena's letterhead. *See id.* One of the forms reads,
"[t]o ensure accurate processing, please return to Keena Staffing within 7 days." *See id.* at 2.
Another reads, "[f]ile Report to Keena within 24 Hours of Acciden/Incident[.]" *See id.* at 5
(emphasis omitted). These forms support Defendant Keena's assertion that it was Plaintiff's
responsibility to manage correspondence between Defendant B.G. Lenders Service and Defendant
Keena beyond the two-week period that Plaintiff claims.

The correspondence is, however, sporadic. *See id.* Plaintiff filled out two of the forms for
herself rather than for other employees. *See id.* at 7-8. The fact that one of these two forms is
addressed to Defendant Granger suggests that Plaintiff might not even have known that the forms
were being submitted to Defendant Keena; it may even suggest that not all of these forms were
submitted to Defendant Keena, despite Defendant Keena's name being on the letterhead. *See id.*
at 7.

In sum, while Defendant Keena has proven that Plaintiff's official duties involved dealing
with Defendant Keena for more than the brief two-week period she alleges, it has not proven the
extensive contact typical of the type of management role that Defendant Keena alleges. Given the

questions of fact surrounding the forms Defendant Keena has supplied and, therefore, the questions of fact surrounding the substance and regularity of Plaintiff's contact with Defendant Keena, these forms are of little value in determining which party the first *Johnson* factor favors.

In furtherance of Defendant Keena's argument that Plaintiff held a management position, it alleges that Plaintiff was responsible for distributing to all Defendant B.G. Lenders Service employees an "Employee Handbook" (the "Handbook") detailing the relationship between Defendant B.G. Lenders Service and Defendant Keena. *See* Dkt. No. 42-10 at ¶ 33. Plaintiff, however, denies that she was ever given the task of distributing the Handbook to other employees and further denies ever receiving the Handbook herself. *See* Dkt. No. 47 at ¶ 18; Dkt. No. 49 at ¶¶ 6-7. Defendant Keena has provided no concrete evidence that Plaintiff was ever given the Handbook or that she ever distributed it to other employees.

Ultimately, the Court's decision with respect to the first *Johnson* factor turns on the fact that Plaintiff was represented by counsel during the EEOC's administrative process. *See Manzi*, 62 F. Supp. 2d at 787-88 (holding that the plaintiff's representation by legal counsel was something to be considered when analyzing the first and fourth *Johnson* factors). Plaintiff allegedly made numerous complaints to Defendant Keena. *See* Dkt. No. 49 at ¶¶ 24-26, 38. Even if Plaintiff made these complaints without knowledge of the relationship between Defendants Keena and B.G. Lenders Service or the role that Defendant Keena allegedly played in the discrimination against her, her complaints themselves were enough for Judd, Plaintiff's attorney, to realize that there was something to investigate. Such an investigation could have revealed Defendant Keena's name on Plaintiff's "Employee Termination Form," giving Judd direct evidence that Defendant Keena may have played a discriminatory role and, therefore, could be named in an EEOC charge. *See* Dkt. No. 42-2 at 1. If the termination letter was not enough, or if

it was not available to Judd, Defendant B.G. Lenders Service admitted to the EEOC on January 1, 2009, that it had a relationship with Defendant Keena. *See* Dkt. No. 53-3 at 1-2 ("I lease employees from Keena Staffing[,] a professional Employer Services company"). A copy of this letter was provided to Judd by the EEOC on April 24, 2009. *See* Dkt. No. 53-2 at 1. As such, Judd was explicitly told of a relationship between Defendant B.G. Lenders Service and Defendant Keena sometime in late April, well within the 300-day period following Plaintiff's termination, which ended on or about June 21, 2009.

Judd's level of experience is relevant in assessing whether she should have named Defendant Keena to the EEOC within the 300-day time period. *See, e.g.*, *Flower*, 2000 U.S. Dist. LEXIS 2829 at *17; *Manzi* 62 F. Supp. 2d at 787-88. As discussed, Judd's specific practice areas are "Matrimonial law, Family law, Divorce, Adoptions, [and] Separations[,]" and, therefore, there is no indication that she has experience litigating Title VII claims. *See* <u>Attorneys</u>, Law Offices of Newell and Klingebiel, www.newellandklingebiel.com/attorneys/ (last visited Sept. 25, 2013). She was, however, adept enough to eventually determine that Defendant Keena could be named in Plaintiff's amended charge. *See* Dkt. No. 42-4 at 1-2. Judd's proven ability to discern Defendant Keena's allegedly discriminatory actions, coupled with her involvement with Plaintiff's legal proceedings from the outset, demonstrates that her inexperience with employment law is not a valid excuse.

Given the available information, including that Defendant Keena was involved in Plaintiff's termination and that Plaintiff complained about the alleged discrimination to Defendant Keena, coupled with Plaintiff's legal assistance from the very beginning of the EEOC's administrative proceedings, the Court finds that the first *Johnson* factor weighs in favor of Defendant.

Defendant Keena urges the Court to treat a finding in its favor with respect to the first *Johnson* factor as dispositive.  *See* Dkt. No. 43-1 at 17.  In support of this argument, Defendant Keena cites *Brown v. County of Oneida*, No. 99-CV-1064, 2000 U.S. Dist. LEXIS 14799, *7 n.2 (N.D.N.Y. Sept. 28, 2000).  Defendant Keena's reliance on *Brown* is misguided.  The *Brown* court applied a categorical bar to represented plaintiffs taking advantage of the identity of interest exception.  *See id.* at *6-*7.  In a footnote, the court assured that, even if the plaintiff had been entitled to the identity of the interest exception, he would have failed to meet the exception's requirements because he could have named the unnamed defendant in his EEOC charge.  *See id.* at *7 n.2.  The unique circumstances of *Brown* make it inapplicable to Plaintiff's case because the reasoning that Defendant Keena relies on did not play a decisive role in the *Brown* decision.  The Court, however, declines to follow *Brown*.

In light of the relevant precedent from district courts across this Circuit, disposing of an identity of interest case based on the first *Johnson* factor alone would be inappropriate.  There have been numerous instances in which the first factor has clearly weighed against the plaintiff, yet the court found in favor of the plaintiff based on the other three factors.  *See, e.g.*, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241-42 (2d Cir. 1995); *Olvera-Morales ex rel. Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 218-19 (N.D.N.Y. 2004); *Donovan v. Eastern Milk Producers Coop. Ass'n*, 971 F. Supp. 674, 680 (N.D.N.Y. 1997) (holding that "no single factor is decisive[]") (citations omitted) (internal quotation marks omitted); *Lafferty*, 2012 U.S. Dist. LEXIS 5276 at *25 ("Although the first factor weighs *heavily* against [the plaintiff], the remaining factors favor a finding that the [unnamed and named defendants] share an identity of interests") (emphasis added).  Plaintiff's identity of the interest argument is far stronger than other plaintiffs who have had the first factor weigh against them but have prevailed on the identity of

interest exception as a whole. *See Zhao*, 472 F. Supp. 2d at 298, 306 (applying the identity of interest exception even though the plaintiff signed a document explicitly stating that she was an employee of the unnamed defendant and received a letter reiterating that fact).

Based on the foregoing, the Court finds that the first factor weighs in favor of Defendant Keena but does not treat the first factor as dispositive of its identity of interest analysis.

### ii. Shared Interests of the Named and Unnamed Defendants

The second *Johnson* factor requires the Court to determine "whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings[.]" *Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888). This factor is designed to measure whether "the unnamed party's interests were represented adequately at the administrative proceeding." *Zustovich*, 2009 U.S. Dist. LEXIS 22640 at *28 (citation omitted).

Defendant Keena argues that its and Defendant B.G. Lenders Service's interests are different because the two parties are "separate and distinct legal entities." *See* Dkt. No. 43-1 at 18. In the past, named and unnamed defendants' status as separate legal entities has been used to show that the second factor weighs in favor of the defendant. *See Zheng*, 2009 U.S. Dist. LEXIS 74891 at *12-*13. Plaintiff disputes that Defendants are "separate and distinct legal entities[]" and asserts that they have "shared duties, responsibilities, assets, [and] benefits . . . ." *See* Dkt. No. 47 at ¶ 5. Defendant Keena denies that it ever shared any assets or financial interests with Defendant B.G. Lenders Service. *See* Dkt. No. 42-10 at ¶¶ 17, 20. Defendant Keena also alleges that it and Defendant B.G. Lenders Service were not responsible or liable for each other's actions.

*See id.* at ¶ 18.  These disputes between Plaintiff and Defendant Keena are easily resolved because Defendant Keena has provided the "Agreement" (the "Agreement") signed by itself and Defendant B.G. Lenders Service, which outlines in detail their relationship.  *See generally* Dkt. No. 42-11.

While the Agreement specifies in detail exactly how Defendant B.G. Lenders Service must compensate Defendant Keena for the services it provides, nothing in the payment scheme indicates a commingling of assets.  *See* Dkt. No. 42-11 at 3-5, § III(A)-(H).  To the contrary, Defendants appear to have explicitly taken steps to avoid any such commingling.  Defendant Granger chose to provide collateral for any late payments Defendant B.G. Lenders Service might make through an automated clearinghouse and a personal guaranty.  *See id.* at 22-26, Exs. B & B-1.  Defendants Granger and B.G. Lenders Service chose this option instead of paying a security deposit or giving Defendant Keena the authority to initiate wire transfers from Defendant B.G. Lenders Service's bank account.  *See id.*  These aspects of the relationship between Defendant Keena and Defendant B.G. Lenders Service demonstrate that the companies made sure that their assets were not communal.

Similarly, Defendants took steps to ensure that each had separate decision-making responsibilities and that neither would be held financially accountable for each other's actions.  The Agreement expressly states that neither company had the authority to act as the other company's agent.  *See id.* at 1, § I.  Additionally, the section entitled "Indemnities and Waiver" demonstrates that Defendants B.G. Lenders Service and Keena each must compensate the other if one party's acts or omissions creates liability for the other party.  *See id.* at 14-16, § X(A)-(G).  In these respects, Defendant Keena has clearly demonstrated that its interests are not identical to Defendant B.G. Lenders Service's interests for all business matters.

The second identity of interest factor is not, however, concerned with a unity of all possible interests between the named and unnamed defendants. The factor only deals with the parties' interests that relate to "obtaining voluntary conciliation and compliance[.]" *Johnson*, 931 F.2d at 209-10 (citation omitted). The Agreement between Defendant Keena and Defendant B.G. Lenders Service is itself an indication that the parties share at least some interests. Defendant B.G. Lenders Service was paying Defendant Keena to share certain interests and fulfill them for its company. For example, the Agreement provides that, "[t]he parties intend that this employment relationship be one by which the traditional duties and rights of an employer with respect to the Employees are allocated between [B.G. Lenders Service] and [Keena] in the manner set forth herein." *See* Dkt. No. 42-11 at 1, § I. It is the nature of these shared interests that determines whether the second *Johnson* factor weighs in favor of Plaintiff or Defendant.

According to Defendant Keena, it was responsible for providing payroll, benefits management, and human resources services to Defendant B.G. Lenders Service. *See* Dkt. No. 42-10 at ¶ 8. It is the human resources component of these services that is of particular relevance to the second *Johnson* factor. The Agreement gave Defendant Keena "the authority to hire all Employees assigned to [B.G. Lenders Service], subject to the terms of any collective bargaining agreement which may exist." *See* Dkt. No. 42-11 at 5, § IV(A). Additionally, Defendant Keena "retain[ed] a right of direction and control of the Employees consistent with its role as a co-employer of the Employees." *See id.* at 5, § IV(B). Defendant B.G. Lenders Service was only left with "control over (i) the day-to-day job duties of the Employees, and (ii) the worksite at which, or from which, the Employees perform services." *See id.* at 6, § IV(B). This balance of power gave Defendant Keena "the right to terminate the employment of an Employee with [Keena] or reassign the Employee to another Client." *See id.* at 6, § IV(D). The terms of the

Agreement, therefore, gave Defendant Keena extensive supervisory control over the employees working for Defendant B.G. Lenders Service. Such an arrangement demonstrates that Defendants share an identity of interest when it comes to making personnel decisions. It was Defendant Keena's authority over personnel decisions that enabled it to take "appropriate disciplinary action, up to and including discharge," when remedying workplace discrimination, meaning that Defendants also shared an identity of interest with respect to conciliation and compliance surrounding claims of discrimination. *See* Dkt. No. 42-12 at 8; *see also Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) ("[The unnamed defendant] approves all personnel decisions at [the named defendant], and thus [the unnamed defendant] and [the named defendant] have identical interests with respect to conciliation and compliance"). The Agreement's allocation of personnel responsibilities, therefore, favors Plaintiff with respect to the second *Johnson* factor.

In addition to provisions dealing with personnel responsibilities in general, some portions of the Agreement specifically address EEOC compliance. Defendant Keena provides Defendant B.G. Lenders Service with various services meant to ensure compliance with laws against workplace discrimination. These include "[e]mployee complaint and dispute resolution[,]" "interpretation of and compliance with local, state and federal employment laws and regulations[,]" and "[t]raining workshops covering employment law compliance, safety." *See* Dkt. No. 42-11 at 40, Ex. F. In the event that any administrative action or litigation related to workplace discrimination were to arise, the Agreement specifically stated that Defendant B.G. Lenders Service and Defendant Keena would collaborate in remedying the situation:

> [B.G. Lenders Service] acknowledges that it is essential to
> [Keena's] performance under this Agreement that [Keena] have
> complete knowledge of any government investigation or inquiry or
> private adversary action *which could in any manner impact upon*

> the duties contemplated by this Agreement. . . . [B.G. Lenders
> Service] agrees to cooperate with [Keena] in the investigation,
> resolution, and defense of any such investigation or inquiry or
> private adversary action in which [Keena] or any of its affiliated
> entities, shareholders, officers, directors, agents and representatives
> are named *or which could in any manner impact upon the types of
> duties contemplated in this Agreement.*

*See id.* at 13-14, § IX(L) (emphasis added).

This language demonstrates that Defendant B.G. Lenders Service was paying Defendant Keena to oversee and manage its company's response to workplace discrimination claims, and their interests in any such response were contractually linked. As such, Defendants share an identity of interest with respect to conciliation and compliance with the EEOC, and the second *Johnson* factor weighs heavily in favor of Plaintiff.

The Agreement's indemnity provisions did, in fact, extend to "any and all claims made by Employees resulting from any . . . charges of discrimination; wrongful termination, or other labor-related causes of action; and claims of sexual harassment." *See id.* at 15, § X(A). The indemnity provisions do not negate the fact that Defendants jointly endeavored to enact and carry out policies to minimize the occurrence of workplace harassment and, therefore, minimize the number of incidents that could potentially give rise to these types of damages. Moreover, Defendants agreed to cooperate in defending each other between courts and administrative agencies. Resolving any complaints through "voluntary conciliation and compliance" is the means by which both these goals are met. *See Johnson*, 931 F.2d at 209-10. The existence of the indemnity provisions, therefore, does not change the fact that Defendants share interests in this respect.

As the Court previously noted, the second *Johnson* factor acknowledges that it is not always necessary for an unnamed defendant to be involved in the EEOC's voluntary compliance

session because the named defendant, who was present for that session, may have shared interests with the unnamed defendant and represented those interests to the EEOC.  *See Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888).  The more closely the named and unnamed defendants share interests, the less likely the unnamed defendant's absence makes litigation inevitable.  The second *Johnson* factor's evaluation of shared interests, therefore, measures the likelihood that Title VII's goal of voluntary compliance will be achieved.

In the case at hand, not only did Defendant B.G. Lenders Service represent Defendant Keena's interests in the administrative process, Defendant Keena eventually represented its own interests.  Defendant Keena was admitted into the voluntary conciliation and compliance process and provided information to the EEOC.  *See* Dkt. No. 42-5 at 1; Dkt. No. 42-6 at 1.  On September 30, 2011, the EEOC determined that there was reasonable cause to believe that Defendants B.G. Lenders Service and Keena had discriminated against Plaintiff.  *See* Dkt. No. 42-7 at 1-2.  The voluntary conciliation process lasted until December 23, 2011, at which point the EEOC decided its conciliation attempts were unsuccessful.  *See* Dkt. No. 42-8 at 1.  By representing its own interests during the conciliation process, Defendant Keena ensured that the second *Johnson* factor unambiguously weighs in Plaintiff's favor.

Based on the foregoing, the Court finds that the second factor weighs extremely heavily in favor of Plaintiff.

### iii.  *Actual Prejudice Suffered by the Unnamed Defendant*

The third *Johnson* factor asks "whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party[.]"  *Johnson*, 931 F.2d at 210 (quoting *Glus I*, 562 F.2d at 888).  This factor weighs strongly in favor of the plaintiff if the unnamed

defendant had actual notice of the EEOC charge. *See Tarr*, 958 F. Supp. at 795 (citation omitted) ("The third factor subsumes the underlying issue of notice. Courts have held that a plaintiff's failure to name or include a party in the agency complaint does not prejudice that party where it had notice of the claims against it and the opportunity to intervene") (citation omitted). This interpretation has been widely adopted by the courts throughout the Circuit. *See Zhao*, 472 F. Supp. 2d at 306; *Parker*, 2004 U.S. Dist. LEXIS 23526 at *11. The third factor weighs in favor of the unnamed defendant when it did not have an opportunity to be present at the EEOC proceedings. *See, e.g.*, *Kearney v. Kessler Family LLC*, No. 11-CV-006016, 2011 U.S. Dist. LEXIS 74159, *10 (W.D.N.Y. July 11, 2011); *Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005); *Gallagher v. IBEW*, 127 F. Supp. 2d 139, 143-44 (N.D.N.Y. 2000).

Defendant Keena clearly had actual notice of Plaintiff's EEOC charge. The EEOC received Plaintiff's initial charge naming Defendant B.G. Lenders Service on December 8, 2008. *See* Dkt. No. 42-3 at 1-2. According to the Agreement, Defendant B.G. Lenders Service was required to ensure that Defendant Keena "[had] complete knowledge of any government investigation or inquiry or private adversary action which could in any manner impact upon the duties contemplated by this Agreement." *See* Dkt. No. 42-11 at 13-14, § IX(L). Defendant B.G. Lenders Service discussed its relationship with Defendant Keena in a letter sent to the EEOC on January 1, 2009. *See* Dkt. No. 53-3 at 1-2. This led Defendant Keena to submit information to the EEOC about its relationship with Plaintiff. *See* Dkt. No. 47-1 at 2. This proves that Defendant Keena was aware of Plaintiff's EEOC charge even if Defendant B.G. Lenders Service had disregarded its contractual obligation to keep Defendant Keena informed.

Defendant Keena was later explicitly named in Plaintiff's "Amended Charge of Discrimination" received by the EEOC on August 24, 2009. *See* Dkt. No. 42-4 at 1-2. The

amended charge alleged specific discriminatory action by Defendant Keena.  *See id.*  On

September 1, 2009, Defendant Keena received a letter from the EEOC informing it of the

amended charge.  *See* Dkt. No. 42-5 at 1.  Defendant Keena submitted a response on September

16, 2009.  *See* Dkt. No. 42-6 at 1.  On September 30, 2011, the EEOC sent a letter to Plaintiff and

both Defendants explaining that it had determined that there was reasonable cause to believe that

Defendants had discriminated against Plaintiff.  *See* Dkt. No. 42-7 at 1-2.  A period of voluntary

conciliation was entered into, but it ended on December 23, 2011, when the EEOC determined

that the efforts were not fruitful.  *See* Dkt. No. 42-8 at 1.

Despite the fact that it was present throughout much of the EEOC administrative process,

Defendant Keena alleges that it was unfairly prejudiced during the process.  *See* Dkt. No. 43-1 at

20-22.  Defendant Keena claims that the EEOC did almost all of its investigative work during the

approximately eight months between Plaintiff's initial charge and her amended charge.  *See id.* at

20-21.  By that point, Defendant Keena claims that the EEOC had already determined that

Defendant B.G. Lenders Service had discriminated against Plaintiff, and the EEOC simply

assumed that Defendant Keena was also liable once Defendant Keena was named in Plaintiff's

amended charge.  *See id.*  This argument is not supported by the record.  Almost immediately

after Defendant Keena was named in Plaintiff's amended charge, the EEOC gave it an opportunity

to respond.  *See* Dkt. No. 42-5 at 1.  Defendant Keena took advantage of that opportunity, *see*

Dkt. No. 42-6 at 1, and the EEOC did not issue its reasonable cause determination until over two

years after it received Plaintiff's amended charge.  *See* Dkt. No. 42-7 at 1-2.

Defendant Keena attempts to support its assertion that the EEOC did not adequately

investigate its involvement in any discrimination against Plaintiff by pointing to the fact that

Keena was only mentioned once by name in the body of the EEOC's determination letter.  *See*

Dkt. No. 42-7 at 2; Dkt. No. 43-1 at 21. Defendant Keena also points to the fact that the EEOC often uses the singular version of the word "Respondent" in its determination letter, rather than the plural form to make clear that both Defendants were being discussed. *See* Dkt. No. 42-7 at 1-2; Dkt. No. 43-1 at 21-22. The EEOC's determination letter, however, is addressed to both Defendant Keena and Defendant B.G. Lenders Service and names both as Respondents. *See* Dkt. No. 42-7 at 1. In deciding this summary judgment motion, in which all inferences must be drawn in favor of Plaintiff, Defendant Keena cannot use purportedly poor drafting and grammar to establish that the EEOC's investigation was inadequate.

Defendant Keena also alleges that it was prejudiced because "[t]he EEOC never made a conclusion supported by the evidence" about its liability for the discrimination against Plaintiff. *See* Dkt. No. 43-1 at 21. This is little more than an allegation that the EEOC did a bad job investigating Plaintiff's charge. Defendant Keena was part of the administrative process for over two years. Defendant Keena's conclusory assertion is insufficient to call into question the EEOC's determination at this stage.

As discussed, Defendant Keena had actual notice of the investigation, and actual notice creates the presumption that the third *Johnson* factor weighs in favor of Plaintiff. Defendant Keena has not put forth sufficient facts to rebut this presumption. As such, the Court finds that the third factor weighs heavily in Plaintiff's favor.

### iv. Fourth Johnson Factor[4]

---

[4] There is little undisputed evidence related to this section. *See* Dkt. No. 60 (in a text order dated April 3, 2013, Magistrate Judge Treece admonished Defendant Keena in the following manner: "This Court advised the parties during the Rule 16 Conference that I would not stay discovery on the filing of a dispositive motion during the discovery period. That instruction

(continued...)

The fourth *Johnson* factor asks "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party[.]" *Johnson*, 931 F.2d at 210 (quoting *Glus*, 562 F.2d at 888). Whether the plaintiff was represented by counsel and what level of Title VII litigation experience that her counsel had is relevant to analyzing this factor. *See Manzi*, 62 F. Supp. 2d at 787-88. The circumstances relevant to this factor are more disputed, and consequently less certain, than the circumstances related to any other portion of the Court's identity of interest analysis. It is not entirely clear what representations were made to Plaintiff about her relationships with Defendant B.G. Lenders Service and Defendant Keena. Since the facts suggest that Plaintiff might have been told that Defendant B.G. Lenders Service was the preferred point of contact for her human resources concerns, the Court finds that the fourth factor weighs in Plaintiff's favor.

Defendant Keena claims that Plaintiff received and distributed to other employees a Handbook explaining the relationship between Defendants B.G. Lenders Service and Keena. *See* Dkt. No. 43-1 at 23. Plaintiff denies ever receiving or distributing such a handbook. *See* Dkt. No. 47 at ¶ 17; Dkt. No. 49 at ¶¶ 6-7.

The Handbook encourages employees to contact Defendant Keena at several specific instances. *See* Dkt. No. 42-12 at 18, 24, 26. These sections of the Handbook deal with welfare benefits, retirement plans, confidentiality, and general information. *See id.* Each of these sections encourages employees to contact a specific person at Defendant Keena and makes no mention of anyone from Defendant B.G. Lenders Service who should be contacted first. *See id.*

---

[4](...continued)
could not have been any clearer. Defendant Keena ignored that instruction, decided to pursue a dispositive motion prematurely, and on its own put discovery on hold. Such decisions were almost at their peril").

For example, the Handbook's section on retirement plans reads, "Consult with the Benefits

Manager @ Keena Staffing for details concerning retirement plan options." *See id.* at 18. The

section of the Handbook dealing with discrimination and harassment, however, gives different

instructions. Under the subsection entitled "Complaint Procedure[,]" the Handbook provides as

follows:

> If you believe you have been harassed on the job, or if you are
> aware of the harassment of others, you should provide a written or
> verbal complaint to your Supervisor or to any other Supervisor as
> soon as possible. If you choose, you may make your complaint
> directly to the Director of Human Resources or President at Keena
> Staffing.

*See id.* at 8. The Handbook subsequently informs employees that they may contact the EEOC

directly instead. *See id.* at 9. While this portion of the Handbook does inform employees that

Defendant Keena is available to help with their problems, it stands in marked contrast with the

other sections of the Handbook that urge employees to contact Defendant Keena only. The

difference in language could give employees the impression that Defendant Keena prefers

Defendant B.G. Lenders Service to handle discrimination and harassment claims at the outset.

This would cause the fourth factor to weigh in Plaintiff's favor.

Moreover, Plaintiff's specific hiring circumstances are also relevant to this factor.

Plaintiff was interviewed by Defendant B.G. Lenders Service at its office after responding to a

help wanted advertisement that Defendant B.G. Lenders Service put in the local paper. *See* Dkt.

No. 47 at ¶ 15; Dkt. No. 42-13 at 1. Defendant Keena was not present at this interview. *See* Dkt.

No. 42-13 at 1. This hiring procedure seems atypical because the Agreement states that

employees are hired through Defendant Keena and assigned to different clients. *See* Dkt. No. 42-

11 at 5, § IV(A). Since the Agreement's language suggests that Plaintiff was employed through

an atypical hiring process, she may have thought that any intimations that employees could

communicate their concerns to Defendant Keena did not apply to her. As of September 15, 2009, even after Plaintiff filed her amended charge, Defendant B.G. Lenders Service claimed that Plaintiff was not a Defendant Keena employee. *See* Dkt. No. 42-13 at 1. If Defendant B.G. Lenders Service was claiming that Plaintiff was never a Defendant Keena employee, it would seem unlikely that it ever encouraged Plaintiff to bring her harassment and discrimination concerns to Defendant Keena. Based on these circumstances, there is no evidence that Plaintiff was encouraged to make any discrimination complaints to Defendant Keena.

Plaintiff was represented by Judd during the EEOC's administrative process. *See* Dkt. No. 42-3 at 1-2. Judd had no apparent experience in Title VII litigation specifically or employment law generally. Defendant B.G. Lenders Service wrote to the EEOC telling the agency that Plaintiff was not a Keena employee. *See* Dkt. No. 42-13 at 1. In light of this representation, it would be unfair to fault Plaintiff's lawyer for not initially comprehending the employment relationship between the parties.

Considering all the evidence before the Court, including the complex nature of Defendants' co-employer relationship, the Court finds that Plaintiff's representation by legal counsel during the administrative process does not prevent the fourth *Johnson* factor from weighing in her favor.

### *v. Totality of the Circumstances*

Since the second, third, and fourth *Johnson* factor all weigh in favor of Plaintiff, the Court finds that she has met her burden on the identity of interest exception. *See Donovan v. Eastern Milk Producers Coop Ass'n*, 971 F. Supp. 674, 680 (N.D.N.Y. 1997). Since the Court has concluded that Defendants Keena and B.G. Lenders Service shared an identity of interests. The

Court denies Defendant Keena's motion for summary judgment as to Plaintiff's Title VII claims.

## C.    New York Human Rights Law (NYHRL) Claims

According to New York State law, claims alleging violations of NYHRL must be filed in court within three years of the date on which the alleged violation occurred.  *See* N.Y. C.P.L.R. § 214(2); *see also Murphy v. Am. Home Prods.*, 58 N.Y.2d 293, 307 (1983); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996).  The Second Circuit has yet to take a definitive stance on whether the statute of limitations for NYHRL claims is tolled while a plaintiff's charge is pending before the EEOC.  *See Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722, 2008 U.S. Dist. LEXIS 101460, *14 (S.D.N.Y. Dec. 15, 2008).  Numerous district courts in the Circuit have, however, allowed for such tolling.  *See id.* at *14-*15 (quoting *Lee v. Overseas Shipping Corp.*, No. 00 Civ. 9682, 2001 U.S. Dist. LEXIS 10622, *28 (S.D.N.Y. July 30, 2001); *see also Capobianco v. Sandow Media Corp.*, No. 11 Civ. 3163, 2012 U.S. Dist. LEXIS 143337, *14-*15 (S.D.N.Y. Sept. 28, 2012) (citations omitted); *Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 373 (W.D.N.Y. 2012) (citations omitted); *Burns v. County of Schenectady*, No. 07-CV-0776, 2009 WL 2568546, *4 (N.D.N.Y. Aug. 18, 2009) (citations omitted); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (citations omitted).  Contrary to Defendant Keena's assertion, this tolling applies even to claims that follow untimely filed EEOC charges.  *See Burns*, 2009 WL 2568546 at *5; *Sundaram*, 424 F. Supp. 2d at 565-66.  Based on this authority, the Court finds that the tolling rule applies to Plaintiff's case and makes her NYHRL claims against Defendant Keena timely.

Plaintiff was terminated on August 25, 2008.  *See* Dkt. No. 47 at ¶ 4.  She filed her complaint with this Court against Defendants Keena and B.G. Lenders Service on March 16,

2012.  *See id.* at ¶ 32.  Ordinarily, this would mean that Plaintiff's NYHRL claims against

Defendant Keena are time-barred because her termination occurred more than three years before

she filed her complaint, or prior to March 16, 2009.  But the NYHRL's three-year statute of

limitations was tolled during the time which her charge against Defendant Keena was pending

before the EEOC.  *See Burns*, 2009 WL 2568546 at *5; *Sundaram*, 424 F. Supp. 2d at 565-66.

Plaintiff filed her amended charge naming Defendant Keena with the EEOC on August 24, 2009.

*See* Dkt. No. 42-4 at 1.  On December 23, 2011, the EEOC notified Plaintiff that it was

relinquishing her case and that she had the right to sue Defendants.  *See* Dkt. No. 42-9 at 1.  This

means that Plaintiff's claim against Defendant Keena was pending before the EEOC for 852 days.

Applying these additional 852 days to the NYHRL's statute of limitations, any claims based on

discrimination occurring after November 15, 2006, are timely.  As such, Plaintiff's NYHRL

claims against Defendant Keena related to her August 25, 2008 termination are timely.

 Defendant Keena cites *Burns* for the principle that if a charge is untimely filed with the

EEOC, the statute of limitations for any related NYHRL claim is not tolled for the duration of the

EEOC's administrative process.  *Burns'* holding, however, comes to the exact opposite

conclusion.  *See Burns*, 2009 WL 2568546 at *5.

 In *Burns*, the plaintiff alleged that her employer was sexually harassing her.  *See id.* at *1.

This led the plaintiff to file an internal grievance with her employer complaining about the

harassment.  *See id.*  On July 22, 2004, after she had filed the internal grievance, the plaintiff

discovered that her employment status had been changed from permanent to temporary.  *See id.* at

*5.  The plaintiff filed an EEOC charge against her employer on December 10, 2004, alleging

sexual harassment.  *See id.* at *1.  On June 8, 2005, the plaintiff filed a second EEOC charge

against her employer, alleging retaliation based on the fact that her employment status had been

changed after she brought her internal grievance. *See id.* The EEOC issued the plaintiff a notice of her right to sue on May 14, 2007. *See id.* The plaintiff filed her complaint against her employer in federal court on July 31, 2007, alleging both sexual harassment and retaliation. *See id.*

The *Burns* court found that the plaintiff's second EEOC charge, filed on June 8, 2005, alleging retaliation, was filed more than 300 days after July 22, 2004, the date she learned about the alleged retaliation against her. *See id.* at *5. The court, therefore, decided that the plaintiff's second EEOC charge was untimely. *See id.* Since the plaintiff's complaint was filed with the court on July 31, 2007, the plaintiff's NYHRL claims based on the July 22, 2004 retaliation would ordinarily have fallen outside the three-year statute of limitations. *See id.* at *5 n.3. The court decided, however, that the statute of limitation on the plaintiff's NYHRL claim was tolled for the period between June 8, 2005 and May 14, 2007, the time during which the EEOC was investigating the retaliation charge. *See id.* at *5 n.4. This tolling period allowed the plaintiff to litigate her NYHRL claims based on retaliation even though she could not litigate her Title VII claims based on retaliation. *See id.* at *5. Ultimately, the plaintiff's NYHRL claims that would have been untimely were rendered timely by the tolling that resulted from an untimely EEOC complaint. *See id.*; *see also Sundaram*, 424 F. Supp. 2d at 559-60, 565-66.

As illustrated by *Burns* and *Sundaram*, even an untimely EEOC charge can serve as the basis for tolling the NYHRL's three-year statute of limitations. As such, even if Plaintiff's amended EEOC charge naming Defendant Keena was untimely, the appropriate tolling allows Plaintiff to bring her NYHRL claims against Defendant Keena.

Based on the foregoing, Defendant Keena's motion for summary judgment dismissing Plaintiff's NYHRL claims against it is denied.

## IV. CONCLUSION

After reviewing the entire record in this matter, the parties submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Keena's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge